IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CR-09-91-C |
| (1) EDWARD KATSUAKI SHIGEMURA;<br>(2) JOHN E. KITCHELL; and<br>(3) JOHN HARVEY SPROUS, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants were charged with being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The Court recently heard testimony at a suppression hearing regarding a number of different motions filed by Defendants.[1]

### BACKGROUND

On February 24, 2009, Defendants were stopped while driving on the Turner Turnpike just beyond the toll booth east of Stroud, Oklahoma, by Oklahoma Highway Patrol Trooper Cody Hyde. In order to pay their toll, Defendants had to exit the main lanes of traffic along the Turnpike and pass through the adjacent Toll Booth Plaza, and in doing so the driver failed to display a turn signal. Once the vehicle exited the Turnpike, it passed through numerous lanes of traffic without signaling in order to reach the only open toll booth located

---

[1] Defendant Sprous filed two motions to adopt, as well as a motion to suppress the video and audio recording of a conversation between co-Defendants Kitchell and Shigemura while seated inside Trooper Hyde's patrol vehicle. Defendant Sprous has pleaded guilty; accordingly, his motions are now moot and will not be considered.

in the far right lane. Trooper Hyde stopped the vehicle immediately after Defendants paid the toll. Mr. Shigemura, the driver, was removed from the vehicle and placed in the patrol car. While Trooper Hyde wrote out the ticket, he asked Mr. Shigemura where they were headed, noting that he appeared nervous, answered questions hesitantly, raised his voice, and fumbled when he responded. A video and audio recording of all the conversations taking place within the patrol vehicle were submitted to the Court.

According to Trooper Hyde, when he returned to the vehicle to verify the identifications of the two passengers, they also appeared nervous. They gave Trooper Hyde a different story regarding the purpose of their trip and where they were headed than had Mr. Shigemura. Trooper Hyde noted that Mr. Kitchell was hesitant in providing answers and was sweating profusely. Mr. Sprous could not provide detailed answers regarding their trip and he refused to make eye contact. According to Defendants, this questioning lasted for more than twenty minutes.

After checking the three men for warrants and writing out the ticket, Trooper Hyde informed Mr. Shigemura that he was free to go. As Mr. Shigemura opened the door, Trooper Hyde asked if he could ask a few more questions, and Mr. Shigemura said yes. The trooper asked if there were any weapons, narcotics, or large amounts of cash in the vehicle, to which Mr. Shigemura said no. Although Defendants refused to permit Trooper Hyde to search the vehicle, he obtained his canine, Meco, from his patrol car and walked the dog around the outside of the vehicle. The dog circled the vehicle twice before alerting on both the driver's

side and the passenger side of the vehicle, as well as on the trunk. The officer then removed Mr. Sprous and Mr. Kitchell from the car, searched both men for weapons, and located a large amount of cash on Mr. Kitchell's person. Mr. Kitchell was placed in the patrol car with Mr. Shigemura; Mr. Sprous was placed in a separate vehicle.

Troopers then searched Defendants' car. They found five loaded handguns, one loaded rifle, and additional ammunition, as well as a large amount of cash in a bag in the trunk. They also found handcuffs, flex cuffs, heavy-duty zip ties, duct tape, gloves, a black hat with the letters "FBI" on it, a black hat with the letters "NARC" on it, a police scanner, and a map of the Dallas/Fort Worth area with the DFW Airport circled in black ink. As various items were removed from the vehicle, the camera located within Trooper Hyde's patrol vehicle recorded comments made by Mr. Shigemura and Mr. Kitchell. Because all three men had previously been convicted of felonies, they were charged with being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

## DISCUSSION

**1. Defendants' Joint Motion to Suppress**

Defendants contend that: (1) Trooper Hyde lacked probable cause to stop their vehicle; (2) Mr. Shigemura was subject to custodial interrogation when he was placed in the trooper's vehicle and was not advised of his Miranda rights; (3) Defendants' detention exceeded that permitted by Terry v. Ohio; and (4) there was no probable cause to search their vehicle.

*a. Probable Cause to Conduct Traffic Stop*

Traffic stops are analyzed under the principles set forth in Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (quoting Terry, 392 U.S. at 20). Therefore, "[t]o determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" Id. In conducting the first inquiry, the Tenth Circuit has held that "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. at 787.

Trooper Hyde contends that he initially stopped Defendants' vehicle because it failed to signal when exiting the highway to pay the toll and when crossing numerous lanes of traffic to reach the open toll booth. Although this portion of the traffic stop is not depicted on the recording made from Trooper Hyde's patrol vehicle, during the subsequent conversation between Mr. Shigemura and Trooper Hyde, Mr. Shigemura admits that he failed to signal. Accordingly, the Court finds that Trooper Hyde had probable cause to make the initial traffic stop.

*b. Length of Traffic Stop*

In determining whether a traffic stop is too long to be justified as an investigative Terry stop, courts are to consider "whether the police diligently pursued a means of

4

investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 686 (1985). Courts should be cognizant that often "police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." Id. The length of the stop must simply be "reasonable under the circumstances." United States v. Gonzalez, 763 F.2d 1127, 1131 (10th Cir. 1985). However, when a citizen voluntarily answers an officer's non-coercive questions, there are no Fourth Amendment implications. United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir. 1984).

The Court finds that, based on the testimony at the suppression hearing, this was a reasonable investigative stop. Trooper Hyde diligently obtained the information he needed in order to accomplish the lawful purpose for which he stopped Defendants, which was issuing a warning for a traffic violation. He did not unnecessarily prolong the detention, but rather any delay that occurred was due to the Trooper's need to move back and forth between his patrol car and Defendants' vehicle in order to question all three men. He obtained their information, verified their criminal history and the fact that none had outstanding warrants, and shortly thereafter finished writing the warning ticket for Mr. Shigemura and informed him that he was free to go. At that point, Trooper Hyde asked Mr. Shigemura if he could ask him further questions, and Mr. Shigemura consented. It took less than ten minutes for Trooper Hyde to complete the remainder of his questioning and run his drug dog, Meco,

around Defendants' vehicle. The Court finds nothing unreasonable about the duration of this stop.

   c. *Miranda Warnings*

Miranda warnings must be given whenever an individual is subject to custodial interrogation. Wilson v. Sirmons, 536 F.3d 1064, 1110 (10th Cir. 2008). "Because of the 'nonthreatening character' of traffic stop detentions, 'persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda.'" Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)). If at some point between the initial stop and the arrest, Defendants were subjected to restraints comparable to those associated with a formal arrest, Miranda warnings would be required. Id.

The Court finds that Defendants were not subject to custodial interrogation until the point at which they were formally placed under arrest, and therefore Miranda warnings were not required. Although Trooper Hyde testified at the suppression hearing that, in his mind, Defendants were not free to leave when he finished writing the ticket, his subjective belief is not dispositive. Stansbury v. Cal., 511 U.S. 318, 325 (1994). Such beliefs "are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action.'" Id. (quoting Berkemer, 468 U.S. at 440). Mr. Shigemura clearly felt free to leave since the video shows him exiting the patrol car while Trooper Hyde was busy with the other two Defendants. Accordingly, the Court finds that Defendants were not subject to custodial interrogation until

such time as they were formally placed under arrest, at which point they were given the required warnings.

   *d. Probable Cause to Search Vehicle*

When an officer uses a drug dog to sniff a lawfully seized vehicle, it is not considered "a 'search' within the meaning of the fourth amendment and therefore an individualized reasonable suspicion of drug-related criminal activity is not required." United States v. Morales-Zamora, 914 F.2d 200, 203 (10th Cir. 1990). When a drug dog alerts an officer to the presence of narcotics in a vehicle, it gives the officer probable cause to search the vehicle. United States v. Raynor, 108 F. App'x. 609, 614 (10th Cir. 2004) (unpublished). "'Once probable cause to search is established, the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband.'" Id.

The Court finds that the dog sniff of Defendants' vehicle did not constitute a Fourth Amendment violation. Based on the different stories recounted by Defendants and their visible nervousness, Trooper Hyde had articulable and reasonable suspicion to detain Defendants in order to determine whether the vehicle might contain contraband. See United States v. Garcia, 167 Fed. App'x. 737, 741 (10th Cir. 2006) (unpublished). Accordingly, there was no need for Defendants to consent to the drug dog sniff.

While sniffing the car, Meco alerted in at least two places to the smell of contraband. Once this occurred, Trooper Hyde had probable cause to search the vehicle. Defendants, however, dispute that probable cause arose, contending that Meco may not have the

necessary success rate and that his alert in this instance may have been a false positive. Based on the evidence and testimony presented during the suppression hearing, the Court finds that Meco has been properly certified as a narcotics detection dog and that Defendants have not met their burden of demonstrating that he is unqualified or in any other way unreliable. Accordingly, Defendants' Joint Motion to Suppress will be denied.

**2. Motion to Suppress Information Obtained from Search of Cell Phone**

Defendant Kitchell contends that the Court should suppress any evidence retrieved during a search of his Samsung T-Mobile cell phone.[2] Officers confiscated Defendant Kitchell's cell phone when the three men were arrested and, on March 11, 2009, the officers applied for and received a search warrant authorizing them to search his cell phone. Defendant Kitchell contends that the affidavit submitted by the officers failed to demonstrate probable cause to search his cell phone.

According to the Supreme Court:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.

---

[2] Defendant Sprous also joined this motion, asking the Court to suppress any evidence seized during a search of his Motorola GSM, Motorola V3 RAZR. Because Defendant Sprous changed his plea to guilty, the Court declines to consider his arguments.

Franks v. Delaware, 438 U.S. 154, 171 (1978). Because Defendant Kitchell failed to provide the necessary allegations, the Court determined that an evidentiary hearing was not necessary on this motion. Defendant Kitchell has not demonstrated any deliberate falsehood or reckless disregard for the truth on the part of the officers requesting the search warrant, and accordingly the Court finds that the warrant was valid, thereby rendering the search proper. Defendant Kitchell's motion to suppress will therefore be denied.

**3. Motion to Suppress Telephone Calls Taped at the Grady County Detention Center**

While at the Grady County Detention Center, calls made by all three Defendants were recorded, and Defendant Kitchell contends that such recordings should be suppressed because they violate Title III of the Wiretap Act.[3] The government contends that such recordings are permissible because Defendants consented to being recorded.

The "prior consent" exception to the Wiretap Act provides: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). The Tenth Circuit has held that a defendant's express consent is not required, but rather implied consent is sufficient to satisfy the statute. United States v. Verdin-Garcia, 516 F.3d 884, 894 (10th Cir.), cert. denied, ___ U.S. ___, 129 S.Ct. 161 (2008). "Use of the

---

[3] Defendant Sprous joined Defendant Kitchell's motion, but his arguments are moot due to his decision to enter a guilty plea in this case. Defendant Shigemura also adopted Defendant Kitchell's motion.

prison telephone is a privilege, not a right, and . . . where the warnings given and other circumstances establish the prisoner's awareness of the possibility of monitoring or recording, his decision to take advantage of that privilege implies consent to the conditions placed upon it." Id. at 895.

The evidence at the suppression hearing indicates that inmates at the Grady County Detention Center are warned in three different ways that their phone calls may be recorded. First, when they are booked into the facility, all inmates are required to sign a copy of the facility's rules and regulations, and are also given a copy of the rules to keep with them. These rules clearly indicate that phone calls may be recorded. Second, there is a notice posted next to all phones located within the facility warning inmates that their phone calls may be recorded. Third, when inmates place a telephone call, before they are able to speak with whomever they are calling, a warning is played over the phone telling them that their call will be recorded. All of these warnings are sufficient to establish that all three Defendants were aware of the possibility that their telephone calls may be recorded. Accordingly, they have not demonstrated a violation of the Wiretap Act and the motions to suppress will be denied.

## CONCLUSION

As set forth more fully herein, Defendants' Joint Motion to Suppress (Dkt. No. 61) is DENIED. Defendant Kitchell's Motion to Suppress Information Obtained from Search of Cell Phone (Dkt. No. 65) and his Motion to Suppress Telephone Calls Taped at the Grady

County Detention Center (Dkt. No. 66) are DENIED.  Defendant Shigemura's Motion to Suppress Jail House Calls (Dkt. No. 73) is DENIED.  Both Defendant Sprous's Motions to Adopt (Dkt. No. 69; Dkt. No. 70) are MOOT.

    IT IS SO ORDERED this 26th day of May, 2009.

_____
ROBIN J. CAUTHRON
United States District Judge